## REMINGTON v. SHAW.
### Civil Action No. 185.

District Court, W. D. Michigan, S. D.

Jan. 12, 1942.

466

Lawrence D. Beukema, of Grand Rapids, Mich., for plaintiff.

Linsey, Shivel, Phelps & Vander Wal, of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

### Findings of Fact.

1. Plaintiff is a former employee of defendant. He brings this action under the provisions of The Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., to recover additional overtime wages alleged to be due.

2. Defendant's business property is located at Cedar Springs, Michigan, a town with a population of about eleven hundred.

3. Defendant's business operations embody two departments. One is a grain and bean elevator, and the other, a local retail or service establishment. These two departments are separate and distinct from each other, and are conducted in separate buildings.

4. In the grain and bean elevator department, agricultural commodities are packed, stored, dried and prepared in their raw or natural state for market. This department is a first concentration point for the processing of dry edible beans into standard commercial grades for marketing in their raw or natural state, such beans being assembled from nearby farms for such processing, and no portion thereof is normally received from other first concentration points.

5. Plaintiff was employed by defendant during the entire period from October 24, 1938, to April 28, 1941, when he left defendant's employ.

6. Most of plaintiff's time was spent in the elevator department where he was engaged in unloading the grain and beans, screening, weighing, sacking, binning, drying, polishing, mixing, and putting the commodities in cars for shipment. The remainder of his time was spent in the retail department, where, at times, he put up feed for customers, operated the grinders, unloaded feed and acted as salesman. None of the sales made in the retail department were for out of state shipment, the sales being principally made direct to farmers living in the vicinity. The undisputed evidence shows that in each of the six months' periods beginning January 1, 1938, and ending June 30, 1941, the total volume of the wholesale sales of the retail department or establishment were not a substantial part of the total sales for such periods, ranging from two and eight-tenths per cent. to ten and seven-tenths per cent. thereof.

7. The total number of employees, exclusive of women engaged in handpicking beans, at no time exceeded seven.

8. During the trial it was stipulated by the parties that if plaintiff has a cause of action, he is entitled to recover unpaid overtime compensation during the period from October 24, 1938, to April 28, 1941, in the sum of $320.13, together with liquidated damages and court costs to be assessed by the court.

### Conclusions of Law.

1. The Fair Labor Standards Act of 1938 provides, in part, as follows: "Sec. 13(a) The provisions of sections 6 and 7 shall not apply with respect to * * * (10) to any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products;"

2. The Administrator of the Act defined the area of production as follows: "Sec. 536.2—'Area of Production' as used in Section 13(a) (10) of the Fair Labor Standards Act.—An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10) in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products: (a) If he performs these operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed ten, or (b) With respect to dry edible beans, if he is so engaged in an establishment which is a

first concentration point for the processing of such beans into standard commercial grades for marketing in their raw or natural state. As used in this subsection (b), 'first concentration point' means a place where such beans are first assembled from nearby farms for such processing but shall not include any establishment normally receiving a portion of the beans assembled from other first concentration points."

3. Inasmuch as during the greater part of the time plaintiff was employed by defendant in an establishment within the area of production, as defined by the Administrator, and was there engaged in handling, packing, storing, drying and preparing in their raw or natural state agricultural commodities for marketing, the work that he performed in this connection was exempt under Section 13(a) (10) of the Act, and there can be no recovery for hours there worked over the minimum as provided by the Act.

4. The Fair Labor Standards Act of 1938 further provides as follows: "Section 13(a) The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." The balance of plaintiff's time was devoted to working in defendant's retail or service establishment and was exempt under the above quoted exception of the Act, inasmuch as plaintiff was engaged there in a retail or service establishment, the greater part of whose servicing or selling was in intrastate commerce. Therefore, plaintiff cannot recover for hours there worked over the minimum as provided by the Act.

5. Plaintiff is not entitled to recover any sum of money for hours worked above the minimum as provided by the Act.

6. A judgment of no cause of action will be entered.

### Opinion.

The findings filed herewith sufficiently disclose the factual situation out of which this controversy arises. The sole question presented is whether or not the exemptions provided in the Act are applicable. The defense is based upon the two exemptions provided in Section 13(a) (2) and 13(a) (10). Defendant contends that the situation presented falls within the last portion of paragraph 66 of Interpretative Bulletin No. 6 (Exhibit E), which reads: "66. Many dealers engaged in selling feed, fertilizer, hay, and other products at retail also assemble and prepare agricultural commodities for shipment. The assembly, preparation, and shipment of agricultural commodities are not retail operations. Accordingly, grain elevators, certain creameries, and establishments engaged in assembling and shipping live poultry and eggs are not retail establishments within the meaning of section 13(a) (2). In these combination enterprises the employees frequently spend a considerable portion of their working time in connection with the assembly, preparation and shipment of the agricultural commodities, and the remainder of their time is spent in selling goods in the feed store at retail. In these cases the employees will be exempt if their operations in connection with the assembly, preparation, and shipment of agricultural commodities fall within the scope of the exemption provided by section 13(a) (10) of the act. In such instances the employees are entitled to a combination section 13(a) (2)—section 13 (a) (10) exemption."

It appears that defendant's retail department is physically segregated and is a separate establishment from the rest of the business. It is located in an entirely separate building from the remainder of the plant, its nearest point being 33 feet from the elevator, with a driveway intervening. It has all of the usual physical attributes of a retail establishment, and is exclusively devoted to the rendition of such services as are customarily performed by country feed stores. The record discloses that the non-retail sales, considered in six months' periods, fluctuated from two and eight-tenths per cent. of the total sales to ten and seven-tenths per cent. thereof. Such a proportion of sales cannot be interpreted as "substantial" in the ordinarily accepted meaning of that word.

The record is clear that all sales were made to purchasers (principally farmers) living in the immediate vicinity and that none were made for shipment outside the state of Michigan. It does appear that certain custom grinding was done in defendant's retail establishment on grains brought in by neighboring farmers, for which a small charge was made, and that certain feeds were mixed with various ingredients required for their sale under certain formulae. These operations were

468

wholly incidental to and actually a part of the retail selling or servicing ordinarily done by country feed stores, and in no sense alter the basic retail character of the establishment. See Part II (C) of Interpretative Bulletin No. 6, page 19 (Exhibit E).

With reference to the exemption claimed by defendant under Section 13(a) (10) of the statute, two prerequisites are necessary to make the exemption applicable, namely, (1) the individual employee must be employed within the area of production, as defined by the administrator, and (2) he must be engaged in performing the specified activities on agricultural or horticultural commodities for market. It fairly appears from the record that the grain handled came from the local sources and from farmers within an area of from thirty to thirty-five miles from Cedar Springs, the agricultural commodities being produced in that locality. Excepting for isolated instances, the sources of the wheat, oats, rye and buckwheat were all local. It also appears that, exclusive of the women employed in handpicking beans, the number of employees did not at any time exceed seven.

The area of production relating to beans is covered by Section 536.2 of the Regulations. The prerequisite for the application of subsection b is that the individual must be engaged in specified activities in an establishment which is a first concentration point for processing such beans into standard commercial grades for marketing in their raw or natural state. The term "first concentration point" is defined by the administrator as the place where such beans are first assembled from nearby farms for such processing. Defendant's elevator establishment is a "first concentration point" at which dry edible beans are received. The testimony discloses that the beans came from farms within an area of from thirty to thirty-five miles; that they are home grown and originate within the general vicinity and normal drawing area of Cedar Springs. Occasional purchase of unprocessed beans from elevators in the vicinity not equipped to handpick the beans or to dry them cannot affect the result. Plaintiff's activities fall within the enumerated categories of Section 13(a) (10).

The record as a whole is convincing that plaintiff was engaged in activities largely confined to the elevator located within the area of production of the agricultural commodities there received, and that the remainder of his time was spent in the retail establishment, all of the selling of which was in intrastate commerce, and most of which was to farmers in the immediate vicinity.

Defendant is therefore entitled to judgment of no cause of action.